# AFFIDAVIT IN SUPPORT OF SEIZURE WARRANT APPLICATION

I, JORDAN S. VAUGHAN, being duly sworn, declare and state as follows:

## I.  INTRODUCTION

1.  I am a Special Agent ("SA") with United States Secret Service ("USSS") and have been so employed since July 2021. I am currently assigned to the Columbia Field Office and primarily investigate financial crimes to include wire fraud, identity theft, credit card fraud, bank fraud and money laundering. Prior to becoming a SA with USSS, I was employed as State Trooper for 3 years, where I conducted numerous investigations. I have received both formal and informal training from USSS and other institutions regarding cyber and financial related investigations, embezzlement, and fraud.

## II.  PURPOSE OF AFFIDAVIT

2.  This affidavit is made in support of an application for a warrant to seize the following (the "Subject Funds"):

Any and all United States Currency in the suspect's JP Morgan Chase

Account # 305418458 (the "Subject Account"), and under the account holder Cory Fortune.

3.  As described more fully below, there is probable cause to believe that the Subject Funds represent the proceeds of one of more violations of 18 U.S.C. § 1343 (Wire Fraud), 18 U.S.C. § 1956 (Money Laundering), or a conspiracy to commit the same, (the "Subject Offenses"), committed by unknown persons and transferred into Fortune's account and are therefore subject to seizure pursuant to 18 U.S.C. § 981(b) and forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) & (C).

4.  In addition, there is probable cause to believe that the Subject Funds are subject to seizure and forfeiture to the United States pursuant to 18 U.S.C. § 982 and 21 U.S.C. § 853(f) because the property would, in the event of conviction on the alleged underlying offenses, be subject to forfeiture, and an order under section 21 U.S.C. § 853(e) would not be sufficient to assure the availability of the property for forfeiture.

5.  The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrants and does not purport to set forth all of my knowledge of, or investigation into, this matter.

JV

6. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only, and all dates and amounts are approximations.

### III. SUMMARY OF PROBABLE CAUSE

7. USSS and local law enforcement agencies are investigating an unknown fraud ring, who through means of a cyber scheme received proceeds from an elderly abuse fraud scheme with the intent of obscuring the nature, origin, and ownership of the funds. Of the funds sent by the victim, they were immediately deposited into Fortune's account. Once the funds were deposited into the account, money was wired to Alipay U.S., which is a third-party mobile and online payment platform, and to other unknown sources. The activity in Fortune's account indicates a continued scheme of receiving funds from multiple victims.

8. As set forth below, the Subject Account was used by the suspect to receive the proceeds of the above-described scheme. Finally, investigating agents believe that the Subject Account was used to receive the deposited funds that were obtained through fraud. Therefore, there is probable cause to believe that the Subject Funds are subject to seizure and forfeiture by the United States.

### IV. STATEMENT OF PROBABLE CAUSE

9. Based on witness interviews, documents obtained from third parties, reports of interviews conducted by other law enforcement officers, conversations with other law enforcement officers, and publicly filed documents, I know the following:

A. Background on Elderly Abuse Fraud Scheme

Often in elderly abuse schemes, the victim is contacted through various means and in this case an unknown individual began communicating with the victim after the receipt of malware on the victim's computer. They were convinced to call the unknown group under the guise of Microsoft Corporate security indicating that their computer had been compromised and therefore their bank account was also compromised. This is a common scheme being tracked by numerous federal agencies and originates from South and Southeast Asia. The victims were instructed to send a cashier's check to an address in NY where the money would then be deposited into an account for "safe keeping". It was immediately following this transaction that the victim realized they were victims of fraud.

B. Theft and Elder Abuse Scheme from I.S.

10. Based on conversations, emails and documents received during this investigation, I learned the following:

a. On or about March 21, 2023, I.S. a resident of Orangeburg, SC. received a notification on her home computer that their device was compromised, and they would need to contact Microsoft Corporate Security to secure their device. I.S. called the number and made contact with whom she believed to be Microsoft. The illicit actors then began to convince I.S. that her device and, in turn, bank account had been compromised. They then convinced her to send a cashier's check to an address for "safe keeping". On March 24, 2023, I.S. sent a cashier's check drawn off South State Bank in the amount of $35,000 to 14516 Hook Creek Blvd. Rosedale, NY 11422. The cashier's check was made payable to Cory Fortune, and DZM Construction. According to bank records, the check was deposited into Subject Account on March 28, 2023. That account was opened just under a month prior and the only transactions in the account were from the fraudulently obtained cashier's checks.

C. Theft and Elder Abuse Scheme from A.L.

11. Based on conversations, emails and documents received during this investigation, I learned the following:

a. On or about March 9, 2023, A.L. a resident of Cooperstown, NY. received a notification on her home computer that her device was compromised, and she would need to contact Microsoft Corporate Security to secure their device. A.L. called the number and made contact with whom she believed to be Microsoft. The illicit actors then began to convince A.L. that her device and, in turn, bank account had been compromised. They then convinced her to send a cashier's check to an address for "safe keeping". On March 10, 2023, A.L. sent a cashier's check drawn off NBT Bank in the amount of $90,000 to 14516 Hook Creek Blvd. Rosedale, NY 11422. The cashier's check was made payable to Cory Fortune. According to bank records, the check was deposited into Subject Account on March 20, 2023.

b. According to bank documents, on March 23, and March 24, 2023, two wires in the amount of $89,500 were sent to Alipay, U.S., and wired into an unknown account.

D. Theft and Elder Abuse Scheme from R.A.

12. Based on conversations, emails and documents received during this investigation, I learned the following:

a. On or about April 11, 2023, R.A. a resident of Parker, CO. received a notification on their home computer that their device was compromised, and they would need to contact Microsoft Corporate Security to secure their device. R.A. called the number and made contact with whom she believed to be Microsoft. The illicit actors then began to convince R.A. that her device and, in turn, bank account, social security number, and credit cards had been compromised and were being used to purchase child pornography. They then convinced her to send a cashier's check to an address in attempts to "lure out

the hacker". On April 11, 2023, R.A. sent a cashier's check drawn off Space Age Federal Credit Union in the amount of $195,000 to 14516 Hook Creek Blvd. Rosedale, NY 11422. The cashier's check was made payable to Cory Fortune. According to bank records, the check was deposited into Subject Account on April 12, 2023.

b.      On the same day, a wire in the amount of $30,000 was sent to a Truist Bank account titled Maxim Tours LLC.

c.      Continuing the same day, another wire in the amount of $4,634 was sent to a Bank of America account in the name of Shameel Sidheeque.

d.      In speaking with JP Morgan Chase Bank, it was determined that all three checks were deposited into the account of Cory Fortune account # 305418458 (Subject Account). Account activity includes very unusual transactions including check deposits and wires without a common business purpose. A large portion of the victims' funds remain in this account.

E.      Subject Accounts / Subject Funds

13.     I reviewed the records for JP Morgan Chase Bank account #305418458 belonging to Cory Fortune. It appears that this account received funds from various sources that are inconsistent with standard business practices. These funds come into the account in large deposits immediately following periods of little to no activity. The account received three check deposits and majority of the funds were wired to other unknown accounts and to Alipay U.S. This activity combined with the intermediary account in which the funds passed through are indicative of known fraud schemes and used to conceal the nature, source, and ownership of the funds. In a span of roughly two weeks, the total amount of fraud from the three cashier's checks totaled $320,000. In the Subject Account, there are no other sources of incoming funds other than the three cashier checks from the victims.

14.     The last known balance of the Subject Account is $195,766.00.

V.      **CONCLUSION**

15.     Based on the facts set forth above, there is probable cause to believe that the Subject Funds are subject to seizure pursuant to 18 U.S.C. § 981(b) and forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) (rendering subject to forfeiture any property that constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1343), and § 982 (criminal forfeiture).

16.     Based on my training and experience, I know that restraining orders served on banks sometimes fail to preserve the property for forfeiture because the bank representative receiving the restraining order fails to put the necessary safeguards in place to freeze the money in time to prevent the account holder from accessing the funds

electronically, or fails to notify the proper personnel as to the existence of the order, or the bank exercises its own right of setoff to satisfy an outstanding debt owed to the bank by the account holder. In contrast, where electronic funds are concerned, a seizure warrant guarantees that the funds will be in the Governments custody once the warrant is served.

17. This affidavit has been reviewed by Assistant U.S. Attorney William K. Witherspoon.

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1.

Jordan S. Vaughan
Special Agent
United States Secret Service

Subscribed to and sworn this 25th day of May, 2023.

Paige J. Gossett
United States Magistrate Judge
District of South Carolina